UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO M. HERNANDEZ,

                Petitioner,

v.                                                                      Case No. 21-cv-0331-bhl

LIZZIE TEGELS, Warden,

                Respondent.

## ORDER DENYING § 2254 HABEAS PETITION

      In 2016, a Milwaukee County jury found Petitioner Antonio Hernandez guilty of two counts of first-degree sexual assault of a child under age thirteen. Hernandez was sentenced to twenty years of initial confinement followed by ten years of extended supervision. In a postconviction proceeding and on appeal, Hernandez's conviction was affirmed. Hernandez has filed a petition in this Court for a writ of habeas corpus invoking 28 U.S.C. § 2254, contending the Wisconsin Court of Appeals unreasonably applied federal law in affirming his judgment of conviction. Because Hernandez has not established that he is entitled to habeas relief, his petition will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

      A.N.M., born July 23, 2007, disclosed in August 2015 that Hernandez, a family friend and houseguest, awoke her on August 3, 2015 by rubbing her private areas and trying to kiss her. (ECF No. 21-6 at 2); *see also State v. Hernandez*, No. 2018AP1067-CR, 2019 WL 13186752, *1 (Wis. Ct. App. Aug. 9, 2019) (summary disposition). A.A.R., born March 7, 2006 and A.N.M.'s half-sister, disclosed that in early February 2015 Hernandez awakened her by rubbing her buttocks beneath her underwear and trying to kiss her. (ECF No. 21-6 at 2.) Hernandez was charged with

---

[1] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." *Id.* The statement of background facts is as set forth by the Wisconsin Court of Appeals in its decision affirming Hernandez's conviction. (ECF No. 21-6); *State v. Hernandez*, No. 2018AP1067-CR, 2019 WL 13186752 (Wis. Ct. App. Aug. 9, 2019) (summary disposition). Where the Court of Appeals' factual discussion is incomplete, the Court has augmented it by citing directly from the trial transcript.

two counts of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1)(e). (*Id.*) He denied the allegations and the matter proceeded to a jury trial in December 2016. (*Id.*)

Prior to trial, Hernandez's counsel raised concerns regarding the petitioner's competency. (*Id.* at 3–4.) The circuit court suspended the proceedings and ordered an examination. (*Id.*) A psychiatrist conducted an outpatient evaluation and was unable to reach a conclusion but opined that "there is a high likelihood that [Hernandez] is feigning disorientation." (*Id.* at 4 (alteration in original).) The court then ordered an inpatient examination. (*Id.*) A second psychiatrist evaluated Hernandez while he was confined at a mental health institution and filed a report opining that Hernandez "has substantial mental capacity to understand the proceedings and assist in his own defense." (*Id.*) At the subsequent hearing addressing the report, neither Hernandez nor his counsel challenged the second report, and the court reinstated the proceedings. (*Id.*)

At the final pretrial hearing, the court agreed to enter an order sequestering witnesses during the testimony. (ECF No. 21-13 at 27.) On the first morning of trial, the prosecutor conveyed a request from A.N.M. and A.A.R., who were eight and nine, that their mother, J.R., be allowed to be present in the courtroom while they testified. (ECF No. 21-16 at 17.) The prosecutor indicated that J.R. would testify first, so there was no risk that her children's testimony would influence her. (*Id.* at 18.) The prosecutor also cautioned J.R. and her children that J.R. could only sit in the courtroom gallery behind glass and must not react to her children in any way. (*Id.* at 19.) Over Hernandez's counsel's objection, the court allowed J.R.'s presence "given the age of the alleged victims" and that J.R. would be sitting in the back of the courtroom around 40 or more feet away and behind glass. (*Id.* at 21.) The court and prosecutor both indicated they would revisit the request if "something is amiss" with J.R.'s presence. (*Id.* at 22.)

On the third day of trial, Juror 13 handed a note to the bailiff. (ECF No. 21-18 at 21.) The court sent the rest of the jurors to the jury room. (*Id.* at 22.) The juror's note stated:

> I Remember,
> Tony did more than rub her vagina, He raped [A.N.M.]. I know this cause I was there. He had a gun on me so I couldn't do anything. He made me stand about 3 or 4 feet away. Gun was in his left hand. He made me stand in front of the door where you come into the room.

(ECF No. 21-7 at 24.) Outside the presence of the jury, Juror 13 stated that this recovered memory came to him "last night" and he denied that he "shared this [memory] with anybody else on the jury." (ECF No. 21-18 at 23.)

The court dismissed Juror 13 and asked him not discuss "this with anybody while the trial is going on." (*Id.*)  The Court later noted, "[t]o me this all seems a little bit crazy, far-fetched . . . . I'm working on the assumption this gentleman just wants off this jury or that he has some undisclosed perception problems." (*Id.* at 26–27.)  Hernandez's counsel expressed a concern that Juror 13 could have tainted the jury.  (ECF No. 21-19 at 2.)  The court convened the jury and informed them that Juror 13 was excused because last night "he remembered for the first time, he may have known someone connected to this case." (*Id.* at 6.)  The court asked the members of the jury "did he happen to share any information with anybody on this panel, this morning?" (*Id.*)  Juror 4 stated that Juror 13 came in that morning but did not say anything.  The court commented, "[a]ll right. Thank you.  I believe I see 13 people shaking their heads no.  Is that correct?" (*Id.* at 6–7.)  The transcript indicated that the jurors nodded.  (*Id.* at 7.)  Counsel did not raise any additional concerns and the case proceeded.

At trial, A.N.M. testified that she knew Hernandez because at one time he lived with her family.  (ECF No. 21-6 at 6.)  She further testified that when she was eight years old, he approached her while she was in bed, pulled down her pants, and touched her private parts, which she uses "to pee." (*Id.*)  The jury watched a video of a forensic interview, conducted by a police officer, in which A.N.M. described how Hernandez "started to rub [her] private" and tried to kiss her. (*Id.* (alteration in original).)  A.A.R. testified that at age eight or nine years old, Hernandez came into her room at night and touched her buttocks. (*Id.*)  The jury also watched a video of a forensic interview, conducted by a police officer, in which A.A.R. said Hernandez "rubbed [her] butt" under her clothes. (*Id.* (alteration in original).)  The jury found Hernandez guilty on both counts of first-degree sexual assault of a child. (*Id.*)  The circuit court sentenced Hernandez to ten years of initial confinement followed by five years of extended supervision on each count, to run consecutively.  (ECF No. 21-21 at 1, 28.)  The judgment of conviction was entered on April 10, 2017.  (ECF No. 21-2 at 1-3.)

Hernandez unsuccessfully sought postconviction relief.  (ECF No. 21-3 at 39–45.)  He appealed from the postconviction court's order denying relief and his judgment of conviction.  In his appeal, Hernandez argued: (1) counsel was ineffective for not further investigating Hernandez's competency to stand trial; (2) counsel was ineffective for failing to seek *in camera* review of the children's medical records; (3) the evidence was insufficient to support the guilty verdicts; (4) the trial court violated its own sequestration order when it allowed J.R. to remain in

the courtroom for her children's testimony; and (5) the trial court should have individually questioned the jurors about Juror 13's claims that he witnessed the offense. (ECF No. 21-6 at 2.) The Wisconsin Court of Appeals summarily affirmed Hernandez's conviction. (*Id.* at 11.) Hernandez then filed a petition for review raising those five claims to the Wisconsin Supreme Court, which was denied. (ECF Nos. 21-7, 21-8.) Hernandez did not file a petition for writ of certiorari with the United States Supreme Court.

On March 15, 2021, Hernandez filed a petition for writ of habeas corpus and a motion to stay proceedings with this Court. (ECF Nos. 1, 2.) The Court granted Hernandez's motion to stay while Hernandez pursued a postconviction motion pursuant to Wis. Stat. § 974.06, asserting abuse of discretion and ineffectiveness of trial and appellate counsel. (*See* ECF No. 15 at 4.) That motion was denied without a hearing. (*Id.*) On October 27, 2022, Hernandez filed an amended petition for writ of habeas corpus asserting the five claims from Hernandez's initial postconviction proceedings and direct appeal. (*Id.* at 6–9.) The Court ordered Respondent to respond to the petition and Respondent filed an answer. (ECF Nos. 17, 21.) The parties have briefed the matter and, for the reasons set forth below, Hernandez is not entitled to habeas relief and his petition will be dismissed.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of Section 2254(d)(1) if the state court "applies a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S.

685, 693–94 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of Section 2254(d)(2) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedent.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

AEDPA's deferential standard applies to all claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). A federal court may not consider the merits of a habeas claim unless that federal constitutional claim has been fairly presented to the state courts through one complete round of review, either on direct appeal or through postconviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). "Fair presentment 'contemplates that both the operative facts and the controlling legal principle must be submitted to the state court.'" *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (quoting *Williams v. Washington*, 59 F.3d 673, 677 (7th Cir. 1995)). Failure to properly present the federal claim at each level of state court review results in procedural default, which can only be overcome if the petitioner demonstrates cause for and prejudice from the default, or a miscarriage of justice due to actual innocence. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

## ANALYSIS

On habeas, Hernandez raises five grounds for relief: (1) trial counsel was ineffective for not further investigating Hernandez's competency to stand trial in violation of Hernandez's Sixth Amendment rights; (2) the evidence was insufficient to support the guilty verdicts in violation of Hernandez's Fourteenth Amendment right to due process; (3) the trial court violated its own sequestration order when it allowed J.R., the mother of A.N.M. and A.A.R, to remain in the courtroom during their testimony, denying Hernandez a fair trial; (4) the trial court failed to

properly question the jurors about Juror 13's claim that he witnessed the offense, denying Hernandez due process and the right to an unbiased jury; and (5) trial counsel was ineffective for failing to investigate or file a motion for an *in camera* review of A.N.M's and A.A.R's medical records. (ECF No. 15 at 6–9 (amended petition); *see also* ECF No. 1 at 6-10.) Because Hernandez cannot demonstrate that federal habeas relief is warranted on any of his claims, his petition will be denied.

I. **Petitioner Has Procedurally Defaulted on Grounds One, Three, Four, and Five of His Habeas Petition.**

A federal court will not review a habeas corpus claim if the state court denied the claim on a state law ground that is adequate to support the judgment and independent of the federal question. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Such a claim is procedurally defaulted, provided the state court "clearly and expressly" relied on the state ground in reaching its decision. *Id.* at 729–31, 735. For the following reasons, Hernandez's claims in grounds one, three, four, and five of his habeas petition are procedurally defaulted.

   A. **Petitioner's Ineffective Assistance Claim Based on Counsel's Failure to Secure a Third Mental Health Examination (Ground One) Is Procedurally Defaulted.**

In Wisconsin, ineffective assistance of trial counsel claims must be pursued in a postconviction motion under Wis. Stat. § 974.02 as part of the direct appeal. *Lee-Kendrick v. Eckstein*, 38 F.4th 581, 586–87 (7th Cir. 2022). A Wisconsin court may not grant relief on such a claim without holding a hearing, known as a *Machner* hearing, at which trial counsel testifies. *State v. Machner*, 285 N.W.2d 905, 908–09 (Wis. Ct. App. 1979). There are procedural hurdles to obtaining a *Machner* hearing. A defendant is only entitled to such a hearing if he "provide[s] sufficient material facts—*e.g.*, who, what, where, when, why, and how—that, if true, would entitle him to the relief he seeks." *State v. Allen*, 682 N.W.2d 433, 446 (Wis. 2004). And a defendant is not entitled to a *Machner* hearing, regardless of the sufficiency of his allegations, if the record "conclusively demonstrates that he is not entitled to relief." *Id.* The Wisconsin Supreme Court recently reiterated the *Allen* rule in *State v. Ruffin*: "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." 974 N.W.2d 432, 438 (Wis. 2022). The *Allen* rule is an adequate and independent state law ground for the purposes of procedural default in federal habeas

corpus proceedings. *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014) ("[T]he *Allen* rule is a well-rooted procedural requirement in Wisconsin and is therefore adequate.").

The Wisconsin Court of Appeals clearly and expressly relied on *Allen* in denying Hernandez's ineffective assistance claim in ground one. The court noted that the first issue was whether a *Machner* hearing was warranted: "If the defendant does not allege sufficient material facts, if the allegations are merely conclusory, or if the record conclusively shows that the defendant is not entitled to relief, the circuit court has discretion to deny a postconviction motion without a hearing." (ECF No. 21-6 at 3 (citing *Allen*, 974 N.W.2d at 438).) The appellate court then denied Hernandez's ineffective assistance claim based on his argument that his trial counsel conducted an insufficient investigation into his competency to stand trial. (*Id.* at 3–4.) The appellate court noted that a second psychiatrist conducted an inpatient evaluation after the first evaluation (conducted by a different psychiatrist) was inconclusive and concluded that Hernandez "has substantial mental capacity to understand the [legal] proceedings and assist in his own defense." (*Id.* at 4 (alteration in original).) The appellate court found that Hernandez did not make any showing as to what the outcome of a third examination would have revealed, "let alone how it would have changed the course of the proceedings." (*Id.*)

Although the appellate court discussed the merits of the ineffective assistance claim, that does not save Hernandez's claim for habeas purposes. Under *Allen*, an appellate court must discuss the merits of a claim to determine whether the claim is sufficiently pleaded and whether the record conclusively shows that the claimant is not entitled to relief. The court's merits discussion was therefore necessary for application of the *Allen* rule. The only issue properly before the appellate court was whether a remand for a *Machner* hearing was required, a prerequisite to ordering relief on an ineffective assistance claim "in every case." *State v. Curtis*, 582 N.W.2d 409, 410 (Wis. Ct. App. 1998). "[T]he lack of a *Machner* hearing prevents [the appellate court's] review of trial counsel's performance." *Id.* Since there was no *Machner* hearing, the Wisconsin Court of Appeals rejected Hernandez's ineffective assistance of counsel claim under *Allen*, an adequate and independent state law ground. *See Lee*, 750 F.3d at 693–94. And it did so clearly and expressly. *See Coleman*, 501 U.S. at 735. Accordingly, Hernandez's ineffective assistance of counsel claim is procedurally defaulted for the purposes of federal habeas corpus review. *See id*.

**B. Petitioner's Due Process Claim Based on the Trial Court's Failure to Sequester the Children's Mother (Ground Three) Is Also Procedurally Defaulted.**

In his third ground for relief, Hernandez asserts that his due process rights were violated when the circuit court failed to sequester J.R., the mother of the children who each testified that Hernandez had touched them inappropriately. As noted by Respondent, Hernandez did not allege that the trial court's decision permitting J.R. to be in the courtroom violated his due process rights in either his postconviction proceedings or on appeal. (ECF No. 29 at 16–19.) Hernandez also failed to invoke any controlling federal case law or standards to advance a due process argument. (*Id.*) The claim is therefore defaulted and cannot be raised on habeas.

On appeal in state court, Hernandez argued that the trial court should not have overruled his objection to exempting J.R. from the sequestration order because he contended J.R.'s presence in the courtroom created a risk that the children would shape their testimony to please her. (ECF No. 21-6 at 7–8; ECF No. 21-3 at 22–23.) The appellate court was not persuaded and noted there was no basis to disturb the trial court's discretionary ruling. (ECF No. 21-6 at 8–9.) The record confirms that Hernandez did not argue that this issue was a constitutional violation in the state courts. Instead, Hernandez challenged the state court's discretionary authority to determine whether witnesses should be sequestered. Hernandez cited and continues to cite to *State v. Green*, 646 N.W.2d 298 (Wis. 2002). (*See* ECF No. 21-3 at 22–23; ECF No. 21-5 at 7–8; ECF No. 21-7 at 23–24; ECF No. 22 at 16.) In *Green*, the prosecutor allegedly violated the sequestration order; there is no discussion of due process or any other constitutional right. 646 N.W.2d at 311–12.

Hernandez does not cite any controlling United States Supreme Court case law governing such a claim and Respondent notes that it is unaware of any such precedent. (ECF No. 29 at 18–19.) To obtain federal habeas review, a state prisoner must first fairly present his constitutional claims through one full round of state-court review. *Malone*, 538 F.3d at 753. Accordingly, since Hernandez failed to present his claim in ground three as a constitutional claim, he cannot do so for the first time in his habeas petition and the claim is procedurally defaulted.

**C. Petitioner's Claim That He Was Denied a Fair Trial Because the Trial Court Did Not Individually Poll the Jurors After Juror 13 Was Excused (Ground Four) Is Also Procedurally Defaulted.**

In his fourth ground for relief, Hernandez asserts that the circuit court should have individually polled the remaining jurors after Juror 13 was dismissed to ensure that he did not taint

the jury pool. (ECF No. 22 at 11–15.) Hernandez argues that without such polling, the court should have declared a mistrial. (*Id.*)

The record shows that after Juror 13 initially shared his alleged recovered memory with the trial court judge by handing a note to the bailiff, the court conducted a discussion with Juror 13 outside the presence of the other jurors. (ECF No. 21-18 at 21–24.) Juror 13 stated that he recalled his observation the previous evening and did not discuss his recollection with the other jurors. (*Id.* at 22–23.) The trial court promptly dismissed Juror 13. (*Id.* at 23.) Hernandez's trial counsel initially told the court that he was considering asking for a mistrial, but he did not know whether the jurors "really were tainted" by Juror 13. (ECF No. 21-19 at 2.) To resolve those concerns, Hernandez's counsel recommended that the trial court individually poll the jurors to ask generally whether Juror 13 had talked to them about possibly knowing a person involved in the case. (*Id.*) The prosecutor did not object to posing that question to the jury but contended that individual questioning was unnecessary "unless someone raises their hand to say that they spoke to Juror Number 13." (*Id.* at 3.) The court proposed questioning the jury as a group about whether any of them had talked with Juror 13 about information he had about the case. (*Id.* at 4.) The parties discussed the wording of the question. (*Id.* at 4–5.) The jury returned, the court queried it, and all the jurors confirmed they had not talked with Juror 13 that morning. (*Id.* 5–7.) The court remarked, "[s]o I think with that, we're good to proceed." (*Id.* at 7.) Hernandez's counsel did not object and the trial resumed.

The appellate court determined that Hernandez forfeited this claim "by failing either to object to the collective questioning conducted by the circuit court or to insist on further questioning after the circuit court concluded its inquiry." (ECF No. 21-6 at 10.) Wisconsin law requires a defendant to raise grounds for a mistrial, such as juror misconduct, contemporaneously at trial. *See State v. Saunders*, 807 N.W.2d 679, 685–86 (Wis. Ct. App. 2011). Hernandez contends that his counsel moved for a mistrial, (ECF No. 22 at 14), but the record confirms he did not. Hernandez's counsel raised the possibility of moving for a mistrial but never did so, either before or after the jurors were questioned. (ECF No. 21-19 at 2–7.)

When a state appellate court rejects a petitioner's federal claim based on an independent and adequate state procedural rule, such as a forfeiture rule, the petitioner's claim in federal court is procedurally defaulted. *See Richardson v. Lemke*, 745 F.3d 258, 268–69 (7th Cir. 2014) ("[A] claim might be procedurally defaulted through a petitioner's initial failure to preserve it with an

objection, even if the petitioner later does attempt to present it for review."). And the Seventh Circuit has explicitly recognized that Wisconsin's forfeiture rule requiring contemporaneous objections to rulings is an independent and adequate state procedural ground. *See Promotor v. Pollard*, 628 F.3d 878, 885–87 (7th Cir. 2010).

Respondent correctly observes that even when a claim is forfeited under the contemporaneous objections rule, a defendant may still obtain review by alleging an ineffective assistance of counsel claim. (ECF No. 29 at 16 n.3.) The problem for Hernandez is that he did not raise or exhaust such an ineffective claim in state court. Indeed, even in his habeas petition, he complains only that the trial court failed to poll the other jurors individually on their communications; he does not plead this issue as an ineffective assistance of counsel claim. (ECF No. 15 at 9.) Accordingly, Hernandez's claim is procedurally defaulted based on Wisconsin's contemporaneous objection rule.

### D. Petitioner's Ineffective Assistance Claim Premised on Counsel's Failure to Seek *In Camera* Review of the Victims' Medical Records (Ground Five) Is Also Procedurally Defaulted.

Hernandez claims that his trial counsel was deficient for failing to investigate or file a motion pursuant to *State v. Shiffra*, 499 N.W. 2d 719 (Wis. Ct. App. 1993), to obtain *in camera* review of A.N.M.'s and A.A.R's medical record. (ECF No. 22 at 17.) Hernandez states he told his trial counsel that "both victims [were] in therapy and taking medication for mental health issues." (*Id.*) The court of appeals concluded that Hernandez failed to allege facts showing that he was entitled to relief after stating the pleading standard as set forth in *State v. Green*, 646 N.W.2d 298 (Wis. 2002):

> To obtain review, the defendant must make a preliminary showing, setting forth "in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available to the defendant." The burden of proof is on the defendant, who "must show more than a mere possibility that the records will contain evidence that may be helpful or useful to the defense." "[S]peculation or conjecture as to what information is in the records" is not a substitute for a fact-specific showing.

(ECF No. 21-6 at 4–5 (citations omitted) (quoting *Green*, 646 N.W.2d at 304, 309–10).)

The appellate court noted that the postconviction court aptly concluded that Hernandez failed to allege sufficient facts demonstrating that a *Shiffra* motion by counsel would have

succeeded. (*Id.* at 5); *see also State v. Sanders*, 912 N.W.2d 16, 23 (Wis. 2018) ("[C]ounsel did not perform deficiently by failing to file a meritless motion."). The court of appeals explained that Hernandez failed to satisfy that standard when his motion merely offered that "'both victims had been in therapy and taking medications for mental health issues.' That statement plainly does not constitute the required 'specific factual basis' for connecting the records with the charges," as required by *Green*. (ECF No. 21-6 at 5 (citing *Green*, 646 N.W.2d at 303).) The court of appeals also rejected Hernandez's attempts to bolster his pleadings on appeal by arguing that the victims' participation in therapy alone satisfied the *Green* pleading standard:

> A showing that a victim received mental health treatment reveals "nothing more than 'the mere possibility' that the records 'might produce some evidence helpful to the defense.'" Indeed, psychiatric counseling, "standing alone . . . has no relevance."

(ECF No. 21-6 at 5 (citations omitted).)

The circuit court denied this claim without an evidentiary hearing. Therefore, the only question before the appellate court was whether Hernandez was entitled to remand for a hearing. *State v. Sholar*, 912 N.W.2d 89, 105 (Wis. 2018). Because Hernandez failed to demonstrate that he could make the showing necessary to obtain a *Shiffra* hearing, the appeals court denied his claim on that state procedural ground. (*Id.*) Similar to Hernandez's ineffective assistance claim in ground one, his ground five claim is also procedurally defaulted.

When this case was tried in 2016, Wisconsin law allowed a criminal defendant to seek *in camera* review of the alleged victim's privately held, privileged medical records in limited situations. *See State v. Shiffra*, 499 N.W.2d 719 (Wis. Ct. App. 1993); *State v. Green,* 646 N.W.2d 298 (Wis. 2002). Under what became known as the *Shiffra/Green* doctrine, a defendant could only obtain review of these materials after making a preliminary showing that the sought-after evidence was "necessary" to a fair determination of guilt or innocence. *Green*, 646 N.W.2d at 310. In 2023, the Wisconsin Supreme Court disavowed the doctrine, concluding that *Shiffra* and *Green* were based on a misreading of United States Supreme Court precedent. *See State v. Johnson*, 990 N.W.2d 174, 182–83 (Wis. 2023). In doing so, it concluded that a defendant had no right to view victims' confidential medical records, explaining that *Shiffra* misread *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), which recognized a defendant's right to *in camera* review of confidential records in a state agency's possession. *Johnson*, 990 N.W.2d at 179. The court held that *Ritchie* "simply does not apply to privately held records" and emphasized that practice under

the *Shiffra/Green* doctrine had proved unworkable and was undermined by new constitutional protections for crime victims. *Id.* at 183. Although neither party raises this issue, the elimination of the *Shifra/Green* doctrine under Wisconsin law also dooms Hernandez's ineffective assistance claim. Because Hernandez no longer has any legal right to demand access to the victim's medical records, his counsel could not have been ineffective in not pursuing a procedure that has now been abrogated. But, as previously noted, even under the prior law, Hernandez's habeas claim fails. That *Johnson* further forecloses Hernandez's attempt to review the victims' private mental health records is a second basis to reject this ineffective assistance ground.

### E. Petitioner Does Not Show Cause and Prejudice or a Manifest Injustice to Overcome Procedural Default.

The procedural default doctrine bars a federal district court from hearing either a claim which was never presented to the state courts, or a claim that was denied on adequate and independent state law grounds. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). But Hernandez's default may be excused if he can demonstrate cause and prejudice for the default or show that the Court's failure to consider his claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749–50. "Cause for a default is ordinarily established by showing that some type of 'external impediment' prevented the petitioner from presenting his claim." *Promotor*, 628 F.3d at 887 (quoting *Lewis*, 390 F.3d at 1026). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *Lewis*, 390 F.3d at 1026). Alternatively, the miscarriage of justice exception applies only in the extremely rare or extraordinary case, requiring the petitioner to "show that he is actually innocent of the offense for which he was convicted, *i.e.*, that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)).

Hernandez has failed to identify any external impediment that prevented him from presenting his claims. Hernandez also fails to identify any new, reliable evidence that was not presented at trial and would establish his innocence under the miscarriage-of-justice exception. In sum, the Court rejects grounds one, three, four, and five as procedurally defaulted. *See Coleman*, 501 U.S. at 731–32 ("[A] habeas petitioner who has failed to the meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").

**II. Hernandez Fails to Show that the Wisconsin Court of Appeals Unreasonably Applied Federal Law in Denying His Claim in Ground Two Alleging Insufficiency of the Evidence.**

The only claim Hernandez has not defaulted is his second ground for relief. In that ground, Hernandez challenges the court of appeals' conclusion that the evidence was sufficient to sustain his conviction. (ECF No. 15 at 7; ECF No. 22 at 8–10.) The court of appeals addressed this claim by setting forth the relevant state law standard from *State v. Poellinger*, which held that an appellate court "may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that . . . no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." (ECF No. 21-6 at 6 (quoting *State v. Poellinger*, 451 N.W.2d 752, 755 (Wis. 1990)).) As noted by Respondent, the standard in *Poellinger* is derived from and identical to *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), the controlling United States Supreme Court precedent with respect to challenges to the sufficiency of the evidence. (ECF No. 29 at 24.)

The appellate court correctly identified that to obtain a conviction for first-degree sexual assault of a child under age thirteen, the State must prove beyond a reasonable doubt that (1) the defendant had sexual contact with the victim; and (2) the victim was under the age of thirteen years at the time of the sexual contact. (ECF No. 21-6 at 6.) The jury heard evidence, through testimony and a forensic interview, that Hernandez came into A.N.M.'s room at night, pulled down her pants, and touched her "private parts" that she used "to pee." (*Id.*) The jury also heard evidence, again through testimony and a forensic interview, that Hernandez likewise woke a sleeping A.A.R. by rubbing her butt underneath her clothing. (*Id.*) The court of appeals concluded that the victims' testimony alone was a sufficient basis for the jury to find Hernandez guilty of two counts of first-degree sexual assault.

Hernandez argued on appeal that "A.A.R. acknowledged during her forensic interview that she once had a dream that Hernandez was in her room, and he therefore contends that 'it is entirely possible that A.A.R. claims could have been bad dreams.'" (ECF No. 21-6 at 7 (quoting ECF No. 21-3 at 12).) The court of appeals determined that this argument was unavailing, emphasizing that the appellate court's duty when reviewing the sufficiency of the evidence is not to ask what is merely possible given that nearly anything is possible. (*Id.* (citing *State v. Smith*, 817 N.W.2d 410, 423 (Wis. 2012).) Hernandez also argued that there were inconsistencies in A.A.R.'s and A.N.M.'s stories. (*Id.*) The court of appeals rejected this argument too, noting: "It is not our appellate

function to upset the verdict based on testimonial inconsistences." (*Id.* at 7 (quoting *State v. Daniels*, 343 N.W.2d 411, 416 (Wis. Ct. App. 1983).)

Hernandez fares no better in this court. The issue on habeas review is whether the court of appeals unreasonably applied federal law when it concluded that the evidence was sufficient to convict Hernandez. The Wisconsin Court of Appeals did not unreasonably apply clearly established Supreme Court precedent in rejecting his claim that the evidence was insufficient. The court of appeals articulated the correct standard from *Virginia v. Jackson* before applying it to the facts of the case and concluding that the testimony of A.N.M. and A.A.R. was sufficient to convict Hernandez. Hernandez has not shown that the court of appeal's analysis was contrary to or an unreasonable application of *Virginia v. Jackson*. The petitioner must show that no "fairminded jurists could disagree" that the state court's decision conflicts with this Supreme Court precedent. *See Richter*, 562 U.S. at 102. Hernandez has not met this high bar. Accordingly, Hernandez's remaining claim for relief, ground two, is denied and his petition for writ of habeas corpus dismissed.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Hernandez's petition for a writ of habeas corpus, ECF No. 1, and amended petition for writ of habeas corpus, ECF No. 15, are **DENIED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**.

Dated at Milwaukee, Wisconsin on March 26, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
